Cynthia JONES on behalf of Stephen C. JONES, Deceased, Appellant–Plaintiff,

v.

PILLOW EXPRESS DELIVERY, INC., Appellee–Defendant.

No. 93A02–0901–EX–68.

Court of Appeals of Indiana.

July 9, 2009.

Jerry Garau, Garau Germano Hanley & Pennington, P.C., Indianapolis, IN, Attorney for Appellant.

Van A. Nation, Nation Schoening Moll, Fortville, IN, Attorney for Appellee.

**OPINION**

ROBB, Judge.

### Case Summary and Issues

Cynthia Jones appeals the decision of the full Worker's Compensation Board (the "Board") affirming the decision of a hearing member, who concluded Stephen Jones, Cynthia's husband and an employee of Pillow Express Delivery, Inc. ("Pillow Express"), was not eligible for worker's compensation benefits. For our review, Cynthia raises two issues, one of which we find dispositive: whether an employee's use of prescription medication in accordance with a physician's instructions can create an intoxication defense to worker's compensation coverage under Indiana Code section 22–3–2–8. Concluding the definition of "intoxication" as used in Indiana Code section 22–3–2–8 includes intoxication by a prescription medication, we affirm.

### Facts and Procedural History

Stephen was employed by Pillow Express as a delivery driver/courier. On January 27, 2004, Stephen was killed in a vehicle accident while returning to Indianapolis after making a delivery in Dayton, Ohio. Some time prior to the accident, Stephen's physician diagnosed him with fibromyalgia and prescribed a Duragesic patch.[1] Stephen was wearing a Duragesic patch when the accident occurred. Stephen's wife and his nephew, Ryan Applegate, both testified in depositions that the patch often made Stephen act as though he was intoxicated. Cynthia testified that when using the patch Stephen acted "[d]rugged", transcript of exhibits at 40, he would occasionally slur his speech and have problems walking, and she felt the patch adversely affected Stephen's judgment. Applegate testified that the patch caused Stephen to have slurred speech, to appear "messed up," id. at 80, and to repeatedly fall asleep for brief periods and then wake up again.

Applegate, who accompanied Stephen on the delivery, testified that Stephen appeared fine on the drive from Indianapolis to Dayton. After they arrived in Dayton, Stephen hit a parked car with the delivery truck in a parking lot. Stephen proceeded to the delivery location, which was nearby, and later returned to the accident. While Stephen spoke with local police regarding the accident, Applegate observed him begin to show signs of intoxication from the patch. Stephen "started to slur his words .... [h]is body would sag and his eyes would droop." Id. at 78.

The effects became worse as Stephen began driving back to Indianapolis. Stephen began falling asleep at the wheel before he left the Dayton city limits. The

---

1. A Duragesic patch is used for pain management and releases Fentanyl, a narcotic pain reliever, into the body.

truck began swerving on the road and crossing the lines. Between Dayton and the scene of the accident, Stephen nodded off "ten to fifteen" times. *Id.* at 86. Applegate testified, "the more we drove, the more he swerved, you know, and the more intoxicated he became, you know, as time went on." *Id.* at 87. Stephen was passing everyone else on the road, Applegate could not remember anyone else passing the truck and he was worried that Stephen was going too fast for the conditions of the roadway.

Soon after leaving Dayton, Applegate lit a marijuana cigarette and began smoking it. Applegate offered the marijuana to Stephen who took one puff but did not inhale deeply. Applegate continued to smoke the rest of the marijuana before throwing the cigarette out of the window.

Finally, as Stephen nodded off, the truck moved half-way off the left side of the road. Applegate told Stephen, "you're nodding off again and you're swerving." *Id.* at 91. When Stephen corrected the direction of the truck, he crossed in front of an oncoming semi truck, which struck the delivery truck on the driver's side, killing Stephen on impact.

On June 24, 2004, Cynthia filed an application for adjustment of claim. The parties filed a detailed stipulation of facts, exhibits and issues and the case was submitted to a single hearing member. The single hearing member issued detailed findings of fact and conclusions of law, ultimately deciding Stephen's accident was caused by his intoxication and denying coverage on that basis. Cynthia sought a review of the single hearing member's decision by the Board. The Board held a hearing on October 21, 2008 and issued its own findings of fact and conclusions of law denying coverage. Cynthia now appeals.

## Discussion and Decision

### I. Standard of Review

We review a decision of the Board only to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, supports the Board's findings and conclusions. *Bowles v. Second Injury Fund*, 827 N.E.2d 142, 146 (Ind.Ct.App.2005). In so doing, we will not reweigh the evidence or judge the credibility of witnesses. *Id.* Rather, we are bound by the factual determinations of the Board and may not disturb them unless the undisputed evidence leads inescapably to a contrary conclusion. *Id.* However, we review questions of law de novo. *Fitzgerald v. U.S. Steel*, 892 N.E.2d 659, 662 (Ind.Ct.App.2008).

### II. Eligibility for Benefits

"The Worker's Compensation Act ('Act') provides 'compensation' for personal injury or death by accident arising out of and in the course of employment." *Id.* (citing Ind.Code § 22–3–2–2). However, "[n]o compensation is allowed for an injury or death due to the employee's ... intoxication...." Ind.Code § 22–3–2–8. Although the employee bears the initial burden of proving a valid claim, the employer bears the burden of proving the employee's intoxication prevents coverage under the Act. *See* Ind.Code §§ 22–3–2–2, –8.

The undisputed evidence demonstrates that Stephen experienced severe side-effects from his prescribed Duragesic patch. The narcotic pain reliever caused Stephen to slur his words. His body slumped, and his eyes drooped. In addition, while driving, Stephen repeatedly nodded off, and the truck he was driving swerved all over the road. Cynthia "does not dispute that [Stephen] was under the influence of [F]entanyl at the time of his death and that the [F]entanyl use contrib-

uted to the accident." Br. of Appellant at 5. However, Cynthia argues that Stephen's "use of medication prescribed by a physician cannot form the basis of an intoxication defense." *Id.* We disagree.

The term "intoxication" is not defined within the Act. However, the term is defined within the title of the Indiana Code related to motor vehicles as:

> under the influence of: (1) alcohol; (2) a controlled substance ...; (3) a drug other than alcohol or a controlled substance; (4) a substance defined in IC 35–46–6–2 or IC 35–46–6–3 [toxic vapors and non-medical nitrous oxide] or (5) a combination of substances described in subdivisions (1) through (4); so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties.

Ind.Code § 9–13–2–86. Fentanyl is a schedule II controlled substance. Ind. Code § 35–48–2–6(c). Although the possession of a valid prescription for a controlled substance is a statutory defense to the charge of driving a vehicle with a schedule II controlled substance in the person's body, *see* Ind.Code § 9–30–5–1(d), it is not a defense to the charge of operating a vehicle while intoxicated, *see* Ind. Code § 9–30–5–2; *State v. Isaacs*, 794 N.E.2d 1120, 1123 (Ind.Ct.App.2003). Thus, for the purposes of operating a motor vehicle, it is not a crime to simply operate a motor vehicle with a prescribed controlled substance in one's system; however, it becomes a crime when the driver becomes intoxicated by the prescribed controlled substance to the extent that it impairs his thought and actions and he loses normal control of his faculties.

■ Similarly here, the mere presence of a prescribed controlled substance, standing alone, is not sufficient to automatically disqualify a claimant from worker's compensation benefits. However, when the prescribed controlled substance causes an intoxicating effect, which contributes directly to the cause of the accident, the claimant is ineligible to receive compensation under the Act. Setting aside completely the issue of Stephen's marijuana use, it is undisputed that his Fentanyl use caused him to be intoxicated and that this intoxication led directly to the accident and his death. Therefore, Stephen is not entitled to worker's compensation benefits.

### Conclusion

Stephen's accident was due to his intoxication, and, therefore, he is not entitled to compensation under the Worker's Compensation Act.

Affirmed.

DARDEN, J., and BAILEY, J., concur.